# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

| | | |
|---|---|---|
| TRUE THE VOTE, DONNA KNEZEVICH, JOSEPH KNEZEVICH, ELAINE VECHORIK, ROY NICHOLSON, JANE COLN, DORIS LEE, MARK PATRICK, JULIE PATRICK, PAUL PATRICK, SYBIL TRIBBLE, CHAD HIGDON, JENNIFER HIGDON AND DAVID PHILLEY § § § § § § § | | |
| Plaintiffs, § | | |
| v. § | Cause No. 3:14cv144-MPM-SAA | |
| THE HONORABLE DELBERT HOSEMANN, in his official capacity as Secretary of State for the State of Mississippi, THE REPUBLICAN PARTY OF MISSISSIPPI § § § § § § § | | |
| Defendants. § | | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

TO THE HONRABLE DISTRCIT COURT JUDGE:

1. NOW COMES True the Vote, Donna Knezevich, Joseph Knezevich, Elaine Vechorik, Roy Nicholson, Jane Coln, Doris Lee, Mark Patrick, Julie Patrick, Paul Patrick, Sybil Tribble, Chad Higdon, Jennifer Higdon and David Philley complaining of Mississippi Secretary of State, Delbert Hosemann and The Republican Party of Mississippi for failure to maintain records and papers of a federal election in violation of 42 U.S.C. § 1974 and to enforce Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. §1973gg-6. In addition, the Individual Plaintiffs bring claims for vote dilution in violation of the Equal Protection Clause, and Equal Protection claims for Mississippi's failure to employ uniform election practices.

# I.
# JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, and 2201, and 42. U.S.C. § 1973gg-9(b)(3).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 104 and 1391.

# II.
# PARTIES

4. Plaintiff, True the Vote, is a 501(c)(3) organization existing under the laws of the State of Texas, with its principal office in Houston, Texas. It is the nation's largest nonpartisan voters' rights and election integrity organization. An integral part of its public interest mission is to inspire and equip volunteers for involvement at every stage of America's electoral process by providing training, technology, and support to citizens so that they can ensure election integrity in their own communities. As part of its activities, True the Vote trains volunteers to monitor local, state and federal elections for compliance with applicable law. As relevant to this case, True the Vote (through its volunteers) culls through voter rolls in order to identify potential election irregularities. After learning of reports of irregularities in Mississippi's June 2014 Republican Primary Run-Off Election, True the Vote requested access to Mississippi's voter rolls. The purpose of its request was to investigate claims that voters illegally double-voted in both the democratic and republican primary races. True the Vote was denied access to the requested materials.

5. Donna Knezevich is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Ms. Knezevich voted in Pearl River County.

6. Joseph Knezevich is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Mr. Knezevich voted in Pearl River County.

7. Elaine Vechorik is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Ms. Vechorik voted in Oktibbeha County.

8. Roy Nicholson is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Mr. Nicholson voted in Lincoln County.

9. Jane Coln is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Ms. Coln voted in DeSoto County.

10. Doris Lee is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Ms. Lee voted in Marshall County.

11. Mark Patrick is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Mr. Patrick voted in Marshall County.

12. Julie Patrick is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Mr. Patrick voted in Marshall County.

13. Paul Andrew Patrick is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Mr. Patrick voted in Marshall County.

14. Sybil Tribble is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Ms. Tribble voted in Wayne County.

15. Chad Higdon is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Ms. Tribble voted in DeSoto County.

16. Jennifer Higdon is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Ms. Hidgon voted in DeSoto County.

17. David Philley is a registered Mississippi voter who voted in the 2014 Republican Primary Election and Republican Primary Run-Off Election. Mr. Philley voted in DeSoto County.

18. Defendant Secretary of State Delbert Hosemann is sued in his official capacity as the chief state election official responsible for coordinating Mississippi's responsibilities under the NVRA. *See* 42 U.S.C. § 1973gg-8, MISS. CODE ANN. § 23-15-211.1(1). Defendant Hosemann is the head of the Office of the Secretary of State for Mississippi. The Elections Division is one of the divisions established within the Office of the Secretary of State. MISS. CODE ANN. § 7-3-71.

19. Defendant, the Republican Party of Mississippi, is a political party organized under the laws of the State of Mississippi. It is the party responsible for conducting the Republican Primary and Primary Run-Off Elections under Mississippi law.

## III.
## FACTUAL ALLEGATIONS

20. Plaintiffs repeat and re-allege the preceding as though set forth fully herein.

21. True the Vote is a non-profit organization that works to protect the integrity of local, state, and federal elections. True the Vote monitors elections for compliance with state and federal law and identifies instances of voting irregularities or possible fraud, including the failure of election officials to verify the identity of voters and the failure of election officials to disqualify ineligible voters from voting in both Republican and Democratic primaries. It trains volunteers to conduct these same activities.

22. As part of its mission to protect electoral integrity, True the Vote examines official lists of eligible voters and other voter registration data to verify their accuracy and currency.

23. In June 2014, in an effort to determine whether ineligible voters had been allowed to cast ballots in the Mississippi Republican Primary Run-Off Election (the "election"), True the Vote requested access to the State of Mississippi's voter records. Immediately prior to the election, True the Vote requested the records from Hinds and Rankin Counties. Their request was made pursuant to NVRA Section 8(i)(1). *See* 42 U.S.C. 1973gg-6(i).

24. True the Vote was denied access to the records.

25. True the Vote has expended significant time and resources to investigate issues related to the Republican Primary Run-Off Election and assist its local community partners with voting concerns, including potentially improper election administration practices in local jurisdictions of Mississippi. By preventing access to these records, Defendants are denying True the Vote's rights under the NVRA, subverting the Act's purpose and inhibiting True the Vote's

efforts to carry out its voter protection and election administration reform programs and activities.

26. Individual Plaintiffs Elaine Vechorik and Roy and Nicholson, among other Plaintiffs, (collectively, the "Individual Plaintiffs"), also requested access to Mississippi's voter records pursuant to NVRA Section 8(i)(1). While these plaintiffs were not wholly denied access to the records like True the Vote, they encountered other, unlawful obstacles to their NVRA Section 8(i)(l) requests.

27. Upon information and belief, the Individual Plaintiffs were granted access to county voter rolls, but were advised that the records would not be produced in unredacted form. Rather, the Individual Plaintiffs were told Mississippi law required the county to redact each voter's date of birth from the rolls at the Plaintiffs' cost. Plaintiffs incurred the cost of redacting this information in violation of the NVRA.

28. Once the Individual Plaintiffs secured the requested records, they perceived certain irregularities in them. Specifically, the Individual Plaintiffs observed duplicate, missing and/or written entries in the voter rolls indicating that voters who had voted in Mississippi's Democratic Primary later voted in the Republican Primary Run-Off. Such "double-voting" violates Mississippi Code § 23-15-575, which states: "No person shall be eligible to participate in any primary election unless he intends to support the nominations made in which he participates."

29. Having noted irregularities in the voter polls, the Individual Plaintiffs now suspect that their lawful votes in the Republican Primary Run-Off have been impermissibly diluted by unlawful ballots cast in violation of the prohibition on "double-voting."

## IV.
## CONSTITUTIONAL FRAMEWORK

30. Plaintiffs repeat and reallege the preceding as set forth fully herein.

31. "[T]he Equal Protection Clause guarantees the opportunity for equal participation by all voters." *Reynolds v. Sims*, 377 U.S. 533, 566, 84 S.Ct. 1362 (1964). This is known as the "one person, one vote" rule, and it guarantees that every individual's vote is weighed equally. *Id.* at 558. Because voting is a "fundamental political right," it is subject to strict scrutiny. *Romer v. Evans*, 517 U.S. 620, 650 n. 3, 116 S.Ct. 1620 (1996). When a political subdivision allows unqualified voters to cast a vote in a given election, it dilutes the voting power of some qualified voters. It is well established that the right to vote "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Bush v. Gore*, 531 U.S. 98, 105, 121 S.Ct. 525 (2000) (quoting Reynolds, 377 U.S. at 555).

## V.
## FEDERAL AND STATUTORY FRAMEWORK

32. Plaintiffs repeat and re-allege the preceding as though set forth fully herein.

33. In 1993, Congress enacted the NVRA to safeguard electoral integrity. The NVRA obligates states to protect the accuracy of voter rolls. To ensure voter records are accurate and current, Section 8(i)(1) of the NVRA provides:

> Each State shall maintain for at least 2 years and **shall make available for public inspection** and, where available, photocopying at a reasonable cost, *all records* **concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters**, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

42 U.S.C. 1973gg-6(i).

7

34. Poll books—the records at issue in this case—mirror the state's voter registration rolls. They are records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. § 1973gg-6(i)(1); *see Project Vote/Voting for Am., Inc.*, 682 F.3d at 335. Meanwhile, the process of reviewing completed voter materials, such as poll books, constitutes a "program" or "activity" evaluating voter records "for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012). Accordingly, the records made the basis of this case are subject to the NVRA.

35. The NVRA provides for a private right of action to enforce violations of the Act. *See* 42 U.S.C.A. § 1973gg. While a person aggrieved under the chapter may typically need to provide notice of the violation to the chief election official of the State involved prior to filing suit, notice need not be given if the violation occurred within 30 days before the date of an election for Federal office. *See* 42 U.S.C.A. § 1973gg-9. Because the violations alleged in this suit occurred within 30 days of the June 2014 Republican Primary Run-Off, Plaintiffs were not required to give notice of the violations alleged in this lawsuit.

36. Mississippi law also requires counties to maintain accurate voter rolls and poll books for general and primary elections *See* MISS. CODE ANN. § 23-15-135; 23-15-125; 23-15-127. But, Mississippi law imposes additional restrictions on public access to records concerning the accuracy and currency of voter registration rolls, such that only certain aspects of the voter rolls are permitted to be copied and inspected by the public. In particular, Mississippi law requires parties inspecting records under the NVRA to bear the cost of redacting "exempted," identifying information from the voter rolls. *See* MISS. CODE. ANN. § 25-61-5 ("public agency shall be entitled to charge a reasonable fee for the redaction of any exempted material, not to

8

exceed the agency's actual cost."). While these costs appear minimal at first blush, upon information and belief, parties inspecting voter rolls have had to pay as much at $1,400 to redact dates of birth from the voter records. Such information while "exempted" by Mississippi law from disclosure is not exempt from disclosure under the NVRA. Nor may the State force parties to bear the costs of redacting such information form voter rolls, as the NVRA does not allow for states to recover reasonable costs of redaction.

## VI.
## CAUSES OF ACTION

### Count I
### True the Vote Alleges a Violation of National Voting Registration Act's Public Disclosure Provision

37. Plaintiffs repeat and re-allege the preceding as though fully set forth herein.

38. The NVRA imposes a variety of requirements on states concerning voter registration procedures and policies. 42 U.S.C. § 1973gg-6. Those requirements include requirements that states confirm voter registrations, ensure only registered voters vote in elections, remove ineligible voters from voter rolls and maintain accurate voter registration lists. *See id.* These NVRA obligations supplement the Defendants' unique statutory obligation to maintain records of federal elections pursuant 42 U.S.C. § 1974, which requires the State to retain and preserve for a period of twenty-two months all records and papers concerning a federal election for Senate.

39. The NVRA mandates public disclosure of all records related to the accuracy and currency of voter registrations. *Id.* § 1973gg-6(i)(1).

40. Shortly before the Republican Primary Run-Off Election, True the Vote, via its volunteer base, made a valid and timely request to review voter rolls and poll books under the NVRA, but it was denied access to those records.

41. The records requested by True the Vote are subject to the NVRA Public Disclosure Provisions because they are "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *See* 42 U.S.C. § 1973gg-6(i)(1); *Project Vote/Voting for Am., Inc.*, 682 F.3d at 335.

42. True the Vote is protected by the Act's Public Disclosure Provision. It is an entity engaged in activities to verify the accuracy and currency of Mississippi's voter rolls, and has suffered an "informational injury" because the NVRA confers upon it a right to public information, yet such information has been withheld from True the Vote. *See Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 702-07 (E.D. Va. 2010) *aff'd* 682 F.3d 331, 335 (4th Cir. 2012) (holding voter organization denied access to public records under NVRA protected by Act's provisions and had standing to sue for injury).

43. The NVRA specifically provides a private right of action to any person who is aggrieved by a violation of the Public Disclosure Provision. *See* 42 U.S.C. § 1973gg-9(b). Therefore, True the Vote may properly bring suit to enforce its right to the information in question under the NVRA.

44. Finally, True the Vote has satisfied all conditions precedent to filing suit, as it requested access to public records under the NVRA within thirty days of an election. *See id.* § 1973gg-9(b)(3).

45. Based on the forgoing, True the Vote alleges that the Defendants have violated the Public Disclosure Provision of the NVRA.

46. True the Vote seeks a declaration of its right to inspect the records made the subject of this lawsuit and injunctive relief granting it access to the same under the NVRA. *Id.* §

1973gg-9(b). Specifically, True the Vote requests a declaration of its right to inspect voter records, including absentee voting envelopes, absentee ballot applications and any associated applications therewith, voters rolls, voter poll books, voter registration applications and federal post card applications. True the Vote requests injunctive relief granting it access to such records.

### Count II
### The Individual Plaintiffs Allege a Violation of the NVRA Based on Conflict with State Laws

47. Plaintiffs repeat and re-allege the preceding as though fully set forth herein.

48. The Supremacy Clause of the United States Constitution, Art VI, part 2, states in part: "This Constitution, and the Laws of the United States which shall be made in pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding."

49. The NVRA and its Public Disclosure Provision place binding requirements on the states. To the extent that any state law conflicts with the NVRA, such law is preempted and superseded by the NVRA as a federal statute.

50. The Public Disclosure Provision explicitly and unambiguously requires that the records made the subject of this suit be made available to the public for inspection and, where available, photocopying, because the requested records are "records concerning the implementation of programs or activates conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. 1973gg-6(i).

51. The Individual Plaintiffs requested access to records under the NVRA, but faced obstacles to securing the records that violate the NVRA. The Individual Plaintiffs were advised that Mississippi law required clerks to redact each voter's date of birth from the voter rolls at the Plaintiffs' cost. *See* Miss. Code Ann. § 25-61-5. The NVRA does not, however, contemplate that the public will be made to inspect voter rolls in the absence of critical, non-sensitive

11

information and bear the costs associated with redacting such information. *See Project Vote/Voting for Am., Inc. v. Long*, 889 F. Supp. 2d 778, 781 (E.D. Va. 2012) ("Moreover, and contrary to Defendants' argument, Congress has made its intent clear with regard to the disclosure of an applicant's address, signature, and birth date; disclosure of that information, unlike SSNs, is required by [the NVRA]").

52. To the extent Mississippi Code § 25-61-5 (providing party requesting public records shall bear costs to redact exempted information) or any other statutory or regulatory provision or administrative practice of Mississippi prohibits the disclosure of information required to be freely made available for public inspection and photocopying pursuant to the Public Disclosure Provision of the NVRA, such provisions and practices subvert the purpose of the NVRA and are, therefore, invalid and unenforceable.

53. Plaintiffs therefore seek a declaration that the NVRA preempts any requirement imposed by Mississippi regarding the redaction of information from voter rolls and the costs of the same. Plaintiffs also seek an injunction allowing them to review Mississippi's voter rolls without any redaction (apart from Social Security Numbers).

### Count III
### The Individual Plaintiffs Allege an Equal Protection Violation

54. Plaintiffs repeat and re-allege the preceding as though fully set forth herein.

55. Mississippi Code § 23-15-575 prohibits "double voting" in primary elections. ("No person shall be eligible to participate in any primary election unless he intends to support the nominations made in which he participates."). "Double voters" are defined as those who voted in the June 3, 2014 Democrat Primary Election and then illegally voted in the Republican Primary Run-off Election on June 24, 2014.

56. Individual Plaintiffs, including Donna Knezevich, who have reviewed Mississippi's voter rolls in connection with the Republican Primary Run-Off, have perceived inaccuracies in the voter rolls causing them to question whether their lawful vote was diluted by an unlawful, double vote.

57. The Equal Protection Clause guarantees the opportunity for equal participation by all voters. *Reynolds v. Sims*, 377 U.S. 533, 566, 84 S. Ct. 1362 (1964). Among its guarantees, the equal protection clause guarantees that every individual's vote shall be weighed equally. *Id.* at 558. When a political subdivision allows unqualified voters to cast a vote in a given election, it dilutes the voting power of some qualified voters. It is well established that the right to vote "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Bush v. Gore*, 531 U.S. 98, 105, 121 S.Ct. 525 (2000) (quoting *Reynolds*, 377 U.S. at 555).

58. Parties may sue to vindicate their right to equal protection of the laws. *See* 42 U.S.C. § 1983.

59. Here, unlawful double voting between the democratic and primary elections has the effect of diluting a lawful vote in the Republican Primary Run-Off. Voters who cast ballots in the Democrat Primary Election are prohibited by law from subsequently casting ballots in the opposite party's primary run-off election. The purpose of this prohibition is clear: It prevents gamesmanship by political parties and candidates seeking to skew election results by voters who do not actually support the platform they are voting under. The Individual Plaintiffs, including Donna Knezevich, and Joseph Knezevich, fear such gamesmanship has been allowed to occur in Mississippi and therefore sue to enforce their constitutional rights under the Equal Protection Clause.

60.     Plaintiffs also allege violations of the Equal Protection Clause for Mississippi's failure to employ uniform election practices with regard to maintaining voter records. As demonstrated by Plaintiffs' experiences, counties across Mississippi differ in their treatment of granting access to voter records, including absentee voting envelopes, absentee ballot applications and any associated applications therewith, voters rolls, voter poll books, voter registration applications and federal post card applications. Differing treatment among counties with regard to such records results in unequal protection of voter's rights under the law to ascertain and investigate whether the state has employed proper voting practices and properly documented and recorded votes.

61.     Indeed, Plaintiffs suspect counties have failed to employ uniform procedures for documenting votes on such records. For this additional reason, Plaintiffs allege violations of the Equal Protection clause.

## VII.
## ATTORNEYS' FEES

62.      Plaintiffs seek to recover reasonable attorneys' fees under 1973gg-99(c), which provides for an award of reasonable attorneys' fees, including litigation expenses and costs, the the prevailing party in a cause of action under the National Voting Rights Act.

63.     Plaintiffs also seek to recover reasonable attorneys' fees under 42 U.S.C. § 1988, which allows for an award of reasonable attorneys' fees in suits vindicating actions for deprivations of civil rights.

## VIII.
## PRAYER

The information sought in this lawsuit and the relief requested herein may have a direct impact on the current dispute regarding the outcome of the 2014 Republican Primary Election Run-Off for the office of United States' Senator. The Plaintiffs are currently unable to ascertain

whether unlawful votes resulted in uncertainty in the election results. But the information requested herein may assist in that determination and in restoring confidence in the electoral process.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and that the Court:

(a) Declare that Defendants are in violation of the NVRA by refusing to grant access for inspection and photocopying of the requested records;

(b) Declare that Defendants are in violation of the NVRA by redacting voter birth dates from voter rolls and registration materials and imposing the costs of such redaction on the public;

(c) Permanently enjoin Defendants from refusing to permit access to any requesting party for copying and/or inspection of voter registration applications, absentee voting envelopes, absentee ballot applications and any associated applications therewith, voters rolls, voter poll books, voter registration applications and federal post card applications, as sought by Plaintiffs in this matter;

(d) Award Plaintiffs costs incurred in pursuing this action, including attorneys' fees and reasonable expenses, as authorized by 42 U.S.C. § 1973gg-9(c), 42 U.S.C. § 1988 and any other applicable provision; and

(e) Grant such other and further relief as the Court deems proper.

Date: July 1, 2014

                                              Respectfully submitted,
                                              /s/    *L. Eades Hogue*

| | |
|---|---|
| Joseph M. Nixon | L. Eades Hogue |
| Texas State Bar No. 15244800 | Mississippi State Bar No. 2498 |
| jnixon@bmpllp.com | Louisiana State Bar No. 1960 |
| Kristen W. McDanald | ehogue@bmpllp.com |
| Texas State Bar No. 24066280 | BEIRNE, MAYNARD & PARSONS, LLP |
| kmcdanald@bmpllp.com | Pan-American Life Center |
| Kelly H. Leonard | 601 Poydras Street |
| Texas State Bar No. 24078703 | Suite 2200 |
| kleonard@bmpllp.com | New Orleans, LA 70130 |
| BEIRNE, MAYNARD & PARSONS, LLP | (504) 586-1241 Tel. |
| 1300 Post Oak Blvd, Suite 2500 | (504) 584-9142 Fax |
| Houston, Texas 77056 | |
| (713) 623-0887 Tel. | |
| (713) 960-1527 Fax | |
| (Pro Hac Vice Motions Forthcoming) | |

James E. "Trey" Trainor, III.
Texas State Bar No. 24042052
ttrainor@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, TX 78701
(512) 623-6700 Tel.
(512) 623-6701 Fax
(Pro Hac Vice Motion Forthcoming)

***Counsel for Plaintiffs***